229 P.2d 285

### DENISON v. TOCKER.

No. 5336.

Supreme Court of New Mexico.

· March 20, 1951.

as amended, 50 U.S.C.A.Appendix, § 1895, which so far as this case is concerned, provides: "Any person who demands, accepts, or receives any payment of rent in excess of the maximum rent prescribed under section 204 shall be liable to the person from whom he demands, accepts, or receives such payment (or shall be liable to the United States as hereinafter provided), for reasonable attorney's fees and costs as determined by the court, plus liquidated damages in the amount of (1) $50, or (2) three times the amount by which the payment or payments demanded, accepted, or received exceed the maximum rent which could lawfully be demanded, accepted, or received, whichever in either case may be the greater amount: * * *."

The plaintiff filed her complaint on September 23, 1948, alleging overcharges of rent by the defendant contrary to the above Act. She prayed for treble damages, reasonable attorney's fees and costs. Personal service in this state was never obtained on the defendant, he being a resident of the state of Texas. On February 1, 1950, a writ of attachment issued. The return of the sheriff stated that the defendant could not be found within his county and that the writ was served by posting copies thereof on the premises. On February 10, 1950, a notice of suit was issued by the court. Thereafter, and on February 13, 1950, the notice was personally served on the defend-

Harry L. Bigbee, Donnon Stephenson, Santa Fe, for appellant.

Watson, McIntosh & Watson, and Lyle E. Teutsch, Jr., all of Santa Fe, for appellee.

LUJAN, Chief Justice.

This is a suit for $2014.95 plus a reasonable attorney's fees and costs on account of overcharges for rent, based upon Section 205 of the Housing and Rent Act of 1947,

ant in the State of Texas by one F. B. Rimmer.

Section 22–118 of the 1941 Compilation, reads: " * * * Provided that personal service of such notice of suit upon the defendant outside of the state of New Mexico, made in the same manner as now provided by law for the personal service of summons outside the state of New Mexico, shall be equivalent to publication."

Section 19–101(4) (k), provides: "Personal service of a copy of the summons and complaint out of the state shall be equivalent to publication and deposit in the post office as provided for by * * * of Rule 4. The defendant so served shall be required to appear on or before *thirty days* from the date of service. Return of such service shall be made by affidavit of the person making same."

On March 30, 1950, the defendant moved the court to quash service and attachment as follows:

"(1) That this action, and the claim set forth in the complaint filed herein, is one for statutory penalty and not one founded upon debt or other action under contract, nor upon a tort or other action ex delicto for which attachment is authorized in this state.

"(2) That this court has no jurisdiction over the subject matter, nor the person of defendant; that process is insufficient, and that service of process is insufficient."

Evidently the court believed that process and the service of same were sufficient to comply with the above provisions of the law, and on April 22, 1950, it entered an order quashing the writ of attachment, as follows: " * * * the court having heard argument of counsel and being fully advised in the premises; Finds, that this action and the claim set forth in the complaint filed herein, is one for a statutory penalty and not one founded upon debt or other action under contract, nor upon a tort or other action ex delicto for which attachment is authorized in this state. It is therefore, Ordered and Decreed, that the writ of attachment filed herein be and the same is hereby quashed."

Section 22–102 of the 1941 Compilation, provides: "Attachment authorized in actions ex delicto and ex contractu.—Wherever an attachment may issue against the property of any person upon any debt or other action founded upon contract, attachment may also issue upon any action founded upon a tort or other action ex delicto; this law shall apply to actions which have heretofore or may hereafter accrue."

From the order quashing the writ of attachment the plaintiff appeals. The parties will be referred to as they appeared in the lower court.

Section 205 of the Housing and Rent Act of 1947, as amended, provides that a tenant may bring an action for al-

leged overcharges and recover a maximum of three times the amount of the overcharge (or a minimum amount equal to the actual overcharge), or $50.00 whichever may be greater and that "Suit to recover such amount may be brought in any Federal, State, or Territorial court of competent jurisdiction * * *." While it is true that the right of action exercised here is created by statute we think it is clear that congress thereby intended to create a remedy rather than impose a penalty. The passage of the Act was a matter of great public concern at that time. This appears by Section 201(b) of the Act where it is stated: " * * * the Congress recognizes that an emergency exists and that, for the prevention of inflation and for the achievement of a reasonable stability in the general level of rents during the transition period, as well as the attainment of other salutary objectives of the above-named Act, it is necessary for a limited time to impose certain restrictions upon rents charged for rental housing accommodations in defense-rental areas."

This Act, it will be observed, uses the word "damages," when referring to the wrongful overcharge or overcharges by the landlord. There is no word of "penalty" to be found in it on the subject. Obviously, the Act seeks to provide a remedy for such wrong and to give the tenant the right to recover the damages which he has suffered therefrom. The further provision in the Act, that the amount of such liquidated damages shall be the amount of the overcharge or overcharges, does not change the character of the Act and render it a penal instead of a remedial one.

In Adler v. Northern Hotel Co., 7 Cir., 175 F.2d 619, 620, the following language is used: "Thus Congress created the treble damage remedy as a means of statutory enforcement. The Act creating this remedy is highly remedial, and the plain purpose of § 205 authorizing recovery of three times the amount of an overcharge was to enlist the help of tenants by soliciting their aid in filing suits against overcharging landlords. A remedial statute should be liberally construed to effect the purpose of Congress and to give a remedy in all cases intended to be covered. Miller v. Robertson, 266 U.S. 243, 248, 45 S.Ct. 73, 69 L.Ed. 265. Hence, the language used in § 205 ought to be so construed as to permit the greatest freedom for the filing of such suits."

The decision in Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 228, 36 L.Ed. 1123, states that the demarcation between penal actions and civil actions, in the international sense depends upon whether the purpose is to punish an offense against public justice of the state or to afford a private remedy to a person injured by the wrongful act and holds that the statute in which that action was based was remedial and not penal. Mr. Justice Gray, speaking for the court said: "The test whether a law is

penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual, according to the familiar classification of Blackstone: 'Wrongs are divisible into two sorts or species: private wrongs and public wrongs. The former are an infringement or privation of the private or civil rights belonging to individuals, considered as individuals, and are thereupon frequently termed 'civil injuries;' the latter are a breach and violation of public rights and duties, which affect the whole community, considered as a community, and are distinguished by the harsher appellation of *'crimes and misdemeanors.'* " 3 Bl. Com. 2.

To the same effect is this statement by Judge Biggs, speaking for the Circuit Court of Appeals, Third Circuit, in Porter v. Montgomery, 163 F.2d 211, 215: "A civil action is for damages if it is brought for the compensation of the injured individual. It is for a penalty if it seeks to obtain a sum of money for the state, an entity which has not suffered direct injury by reason of any prohibited action. In order to obtain damages the loss must flow out of the wrong and be its natural and proximate consequence. Smith v. Bolles, 132 U.S. 125, 130, 10 S.Ct. 39, 33 L.Ed. 279. A penalty need have no causal connection with the wrong inflicted. In a penal statute the penalty is inflicted by a law for its violation."

In Beasley v. Gottlieb, 131 N.J.L. 117, 35 A.2d 49, 52, the court said: "The provision for treble damages at the suit of the aggrieved person does not of itself set up a penal action; the damages in such case are directly related to the actual injury and may be merely punitory. It has long been considered that 'where a statute gives accumulative damages to the party aggrieved, it is not a penal action', Read v. Inhabitants of Chelmsford, 16 Pick., Mass., 128, 132. * * *

"We conclude that the suit grows out of the relations of citizens inter sese, rather than out of their relations with the government; that the suit is of a civil nature, remedial of a private wrong and therefore not penal, a private suit for a private wrong; * * *."

Also, see, Heitmuller v. Berkow, 83 U.S. App.D.C. 70, 165 F.2d 961; Everly v. Zepp, D.C., 57 F.Supp. 303; Dorsey v. Martin, D.C., 58 F.Supp. 722; Bendit v. H.L.R. Holding Co., 131 N.J.L. 91, 35 A.2d 53; Kaplan v. Arkellian, 32 A.2d 725, 21 N.J. Misc. 209.

Defendant has relied on the decisions announced in United States v. Gianoulis, D. C., 86 F.Supp. 933 and United States v. Fullerton, D.C., 87 F.Supp. 359. In those cases the United States Government sued under the provisions of the Housing and Rent Act of 1947, as amended by the Act of 1949, for treble damages alleging a vio-

lation of a rent regulation. Thus it will be seen that the actions there were prosecuted by the government on its own behalf on the theory of redressing a wrong to the public, while in the case at bar the individual tenant sues to recover damages for herself under a statute which also provides for action by the government. Cf. Beasley v. Gottlieb, 131 N.J.L. 117, 35 A.2d 49.

The distinction between a penal statute and one which is remedial in its nature is authoritatively demonstrated by the decisions in the cases heretofore cited. When tested by these rules, it is obvious that Section 205, supra, is remedial in its character.

We conclude that the trial court erred in holding that the action was one for a statutory penalty and in quashing the writ of attachment. The judgment and order appealed from are reversed, and the cause remanded for further proceedings in conformity with this opinion, and it is so ordered.

SADLER, McGHEE and COMPTON, JJ., concur.

COORS, J., did not participate.